1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. OCHOTORENA, | 1:05-cv-01524-LJO-DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' |
| v. | MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT BE |
| DARREL G. ADAMS, et al., | GRANTED |
| Defendants. | (Doc. 55) |
| | OBJECTIONS DUE WITHIN 14 DAYS |

_____/

I.    **Procedural History**

Plaintiff Richard A. Ochotorena ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's complaint, filed November 30, 2005, against Defendants Duncan, Fambrough, Curtiss, Lane, and Rodriguez for excessive force in violation of the Eighth Amendment, and against Defendants Adams, Rodriguez, and Kalkis for conspiracy to harm Plaintiff.[1]

On April 3, 2009, Defendants filed a motion for summary judgment and partial summary judgment.  Defs.' Mot. Summ. J. & Partial Summ. J.; Mem. P. & A., Doc. 55.  On May 4, 2009,

---

[1] J. M. Astorga was dismissed from this action without prejudice for Plaintiff's failure to provide information sufficient for the United States Marshal to effect service.  Doc. 106.

1    Plaintiff filed his opposition. Pl.'s Opp'n to Defs.' Mot. Summ. J., Doc. 58. [2]  On May 22, 2009,

2    Defendants filed their reply to Plaintiff's opposition. Defs.' Reply to Pl.'s Opp'n, Doc. 61.

3          On May 14, 2009, Plaintiff filed a motion to stay ruling on Defendants' motion for

4    summary judgment until completion of further discovery. Doc. 60. On March 19, 2010, the

5    Court granted Plaintiff's motion. Doc. 78. Discovery is now completed. On December 20,

6    2011, the Court ordered Plaintiff to file a supplemental opposition, and provided Defendants the

7    opportunity to file a reply. Doc. 121. On January 19, 2012, Plaintiff filed his supplemental

8    opposition. Doc. 122. No reply was filed. The matter is deemed submitted pursuant to Local

9    Rule 230(l).

10   **II.    <u>Summary Judgment Standard</u>**

11         Summary judgment is appropriate when it is demonstrated that there exists no genuine

12   dispute as to any material fact, and that the moving party is entitled to judgment as a matter of

13   law. Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

14         always bears the initial responsibility of informing the district court of the basis
         for its motion, and identifying those portions of "the pleadings, depositions,
15         answers to interrogatories, and admissions on file, together with the affidavits, if
         any," which it believes demonstrate the absence of a genuine issue of material
16         fact.

17   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

18   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

19   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

20   file.'" *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for

21   discovery and upon motion, against a party who fails to make a showing sufficient to establish

22   the existence of an element essential to that party's case, and on which that party will bear the

23   burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential

24   element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In

25   such a circumstance, summary judgment should be granted, "so long as whatever is before the

26   _____

27        [2]  Plaintiff was informed of the requirements for opposing a motion for summary
     judgment by a Court order on November 22, 2006.  Second Informational Order, Doc. 15; *see*
28   *Rand v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

1  district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

2  56(c), is satisfied." *Id.* at 323.

3       If the moving party meets its initial responsibility, the burden then shifts to the opposing

4  party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita*

5  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

6       In attempting to establish the existence of this factual dispute, the opposing party may not

7  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

8  form of affidavits, and/or admissible discovery material, in support of its contention that the

9  dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

10 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

11 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

12 *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

13 *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

14 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

15 nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*

16 *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

17      In the endeavor to establish the existence of a factual dispute, the opposing party need not

18 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

19 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20 trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

21 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

22 *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

23 amendments).

24      In resolving a motion for summary judgment, the court examines the pleadings,

25 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

26 any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

27 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

28 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

3

*States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

### III.   Disputed and Undisputed Facts[3]

At all times relevant to this suit, Plaintiff was a prisoner in the custody of the CDCR at the California Substance Abuse and Treatment Facility ("SATF") in Corcoran, California.  Compl. ¶ 3.  In September of 2003, Defendants Sergeant Curtiss, Officer Duncan, Officer Fambrough, Officer Kalkis, Officer Lane, Officer Reynoso, and Officer Rodriguez were employed at SATF.  Fambrough Decl. ¶ 2, Ex. D, Doc. 56; Curtiss Decl. ¶ 2, Ex. E; Duncan Decl. ¶ 2, Ex. F; Rodriguez Decl. ¶ 2, Ex. G; Kalkis Decl. ¶ 2, Ex. H; Lane Decl. ¶ 2, Ex. I; Reynoso Decl. ¶ 2, Ex. J.  At all times relevant to this suit, Defendant Adams was employed by the CDCR as the warden at SATF in Corcoran, California.  Ex. C, Adams Decl. ¶ 2, Doc. 56.  On September 8, 2003, Defendant Adams played no role in Plaintiff's activities at SATF.  *Id.* ¶ 3.

---

[3]  All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial").  Plaintiff's opposition includes a statement of disputed facts with citations to supporting documents, as well as exhibits and a declaration.

Plaintiff's verified complaint may also be treated as an opposing affidavit to the extent that it is verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). The Court will consider only those facts and evidence that are relevant to resolving the motion for summary judgment.

Defendant Adams did not observe Plaintiff in the medical clinic, yard, program office,

administrative segregation, or anywhere else at SATF on September 8, 2003. *Id.* ¶ 5.  On

September 8, 2003, Defendant Adams did not believe, or have any reason to believe that

Defendants Curtiss, Kalkis, Lane, Reynoso, Fambrough, or Rodriguez posed a threat of harm to

Plaintiff.[4] *Id.* ¶ 4.

On approximately September 4, 2003, Plaintiff began to experience pain in his right

armpit. For approximately three days, Plaintiff took aspirin, which he obtained from the prison

canteen, for the pain. The aspirin only provided Plaintiff with limited pain relief. Plaintiff did not

sleep much on September 5 and 6, and he did not sleep at all on September 7, 2003.  Pl.'s Dep.

---

[4] Plaintiff contends that Defendant Adams was in charge of the overall operation of SATF which included hiring and retention of correctional officers.  Plaintiff also contends that J. M. Astorga and Defendant Fambrough had a known propensities of dishonesty and violence to inmates.  Ex. A, Def. Adams's Resp. To Pl.'s Interrogs.; Pl.'s Decl., Ex. B, Doc. 59. Defendant Adams responded to Interrogatory No. 5 that he was responsible for approving the hiring of correctional staff members below the rank of Captain, except for new hires from the academy. Plaintiff declares that through a *Pitchess* hearing, Plaintiff discovered that prior to the alleged excessive force incident at issue, officer Astorga and Defendant Fambrough had prior acts of excessive and unnecessary force. Ex. B, Pl.'s Decl. 1-2, Doc. 59.

A P*itchess* hearing is the codified holding of *Pitchess v. Superior Court*, 11 Cal. 3d 531 (1974).  The California Supreme Court held that a criminal defendant could compel discovery of certain relevant information in the personnel files of police or custodial officers by making "general allegations which establish some cause for discovery" of that information and by showing how it would support a defense to the charge against him.  *Warrick v. Superior Court*, 35 Cal. 4th 1011, 1019 (2005).  To initiate discovery, a defendant must file a *Pitchess* motion supported by affidavits showing "good cause for the discovery," first by demonstrating the materiality of the information to the pending litigation, and second by "stating upon reasonable belief" that the agency has the records at issue.  *Id.*; Cal. Evid. Code § 1043(b)(3).

If the trial court finds good cause, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance. *Warrick,* 35 Cal 4th at 1019.  The court may not disclose complaints more than five years old, or the "conclusions of any officer" who investigates a complaint, or facts "so remote as to make disclosure of little or no practical benefit."  Cal. Evid. Code § 1045(b).  Typically, the trial court discloses only the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct by the officer.  *Warrick*, 35 Cal. 4th at 1019.  Nothing in a *Pitchess* hearing suggests that the trial court addresses or determines whether the officer in question was in fact guilty of the illegal behavior.  Prior excessive force complaints against Astorga or Fambrough, even if presented, are not sufficient to dispute Defendant Adams's statement that he lacked knowledge of a threat of harm to Plaintiff.  Based on Defendant Adams's response, he was responsible for hiring, not necessarily retention.  Thus, Plaintiff's objection is overruled.

18:7-12, 24:10-16, 25-26, 28:2-15, Jan. 2, 2009.

On September 8, 2003, Plaintiff saw Dr. Kyle in the medical clinic at SATF.  Kyle advised Plaintiff that he was going to prescribe Plaintiff aspirin for his pain.  Plaintiff became frustrated because he did not believe the aspirin would provide him any relief.  *Id.* at 95:6-10; Ex. B, p. 1.

Plaintiff expressed his dissatisfaction and frustration with Kyle's course of treatment. During this interaction, Plaintiff was located approximately two feet from Kyle.  Pl.'s Dep. 96:9-14, 97:10-12, 99:25-100:12.  Medical Technical Assistant (MTA) Hernandez stepped between Kyle and Plaintiff and said "I'm protecting the doctor, that's my job."  Plaintiff responded, "Good thing your job is not really to protect the doctor, because if you had to, you don't look like you could have protected much." Immediately after Plaintiff made that statement, Hernandez activated his personal alarm.  *Id.* at 100:24-101:3.

Hernandez was approximately fifty years old, five feet and two inches tall, and weighed one hundred and twenty pounds.  *Id.* at 99:22-24, 102:16-17.  Plaintiff was thirty five years old and was approximately five feet and seven inches tall and weighed approximately one hundred and sixty pounds.  *Id.* at 102:4-11.  Whenever an assault or some other incident occurs, CDCR policies mandate that correctional staff first activate an alarm before taking any further action. The purpose of this policy is to summon help and warn everyone at the prison about the developing situation. Other correctional staff or prisoners could unwittingly become involved in the incident, which would increase the potential danger of the situation. Id. at 106:15-22; Fambrough Decl. ¶ 4; Curtiss Decl. ¶ 4; Duncan Decl. ¶ 4.  Correctional staff do not use their alarms if inmates are only arguing with correctional staff.  Pl.'s Dep. 106:23-107:4.

Defendants Curtiss, Duncan, and Fambrough responded to MTA Hernandez's alarm. Defendants Curtiss, Duncan, and Fambrough believed it was necessary to place Plaintiff in handcuffs because: (1) they were responding to an alarm; and (2) they believed Plaintiff was agitated.  Fambrough Decl. ¶¶ 5-8; Curtiss Decl. ¶¶ 5-9; Duncan Decl. ¶¶ 5-9.

Defendant Curtiss ordered Plaintiff to get down on the ground.  Pl.'s Compl. ¶ 22. Plaintiff complied with the order and Defendant Fambrough placed Plaintiff in handcuffs.

6

Fambrough ¶ 7.[5]  Plaintiff contends that Defendant Fambrough squeezed the handcuffs so tightly

that the handcuffs cut off circulation in both hands and caused Plaintiff's fingers to go numb.

Pl.'s Compl. 6, ¶ 25.[6]

    Defendants Curtiss and Duncan did not observe anything unusual about the way

Defendant Fambrough applied the handcuffs, and they did not believe the handcuffs were

causing Plaintiff any injury.  Curtiss Decl. ¶ 10.  Plaintiff never specifically indicated that his

handcuffs were causing him any pain.[7]  During the escort, Defendants Duncan and Fambrough

made it appear that Plaintiff was attempting to struggle by causing him to sway back and forth

and saying "Stop resisting."  Pl.'s Dep. 120:11-24.

    Other than causing Plaintiff to rock back and forth, no force was used against Plaintiff

during the escort.  *Id.* at 122:2-14.  As Plaintiff was about to enter the program office, defendant

Reynoso observed Plaintiff rocking back and forth.  It would have appeared to defendant

Reynoso that Plaintiff was resisting the officers during the escort.  *Id.* at 122:20-23; 123:6-12.[8]

---

[5]  Defendants contend that Defendant Fambrough was the officer who ordered Plaintiff to
get down on the ground. Ex. D ¶ 7; Ex. E ¶ 8; Ex. F ¶ 8, Doc. 58.  Plaintiff in his complaint
stated that it was Defendant Curtiss who ordered him to the ground.  Pl.'s Compl. ¶ 22.
Plaintiff's objection is granted.  Defendants contend that this is not a material dispute since
neither Defendant Curtiss or Fambrough is moving for summary judgment on Plaintiff's Eighth
Amendment claims.  Defs.' Resp. To Pl.'s Statement of Disputed Facts 2:18-20, Doc. 61-2.

[6]  Defendants contend that Defendant Fambrough used only enough force to ensure that
Plaintiff could not slip out of the handcuffs, and that Defendant Fambrough did not intend to
cause Plaintiff any injury, and that he did not tighten the handcuffs to the point where they would
cause injury.  Fambrough Decl. ¶ 7.  Plaintiff's verified complaint alleges that Defendant
Fambrough squeezed the handcuffs so tight that they cut off circulation.  Plaintiff's objection is
granted.  Defendants contend that this is not a material dispute since Defendant Fambrough is not
moving for summary judgment on Plaintiff's Eighth Amendment claims.  Defs.' Response Pl.'s
Statement Disputed Facts 3:2-5, Doc. 61-2.

[7]  Plaintiff contends that he stated to Defendants Duncan and Fambrough that "This ain't
necessary."  Pl.'s Statement Disputed Facts 2:27-3:2.  Plaintiff's contention does not contradict
Defendants' statement that Plaintiff did not indicate that his handcuffs were causing him any
pain.  Plaintiff's objection is denied.

[8]  Plaintiff contends that it is subjective whether Defendant Reynoso believed that
Plaintiff was resisting the officers or not.  Pl.'s Suppl. Opp'n, Disputed Facts 7, Doc. 122.
Plaintiff's deposition testimony indicates that Plaintiff believed Defendant Reynoso had

Defendant Reynoso did not file a report regarding this incident.  Plaintiff claims that Defendant

Reynoso should have filed a report that said, "I observed this inmate resisting these officers."  *Id.*

at 124:9-23.[9]  Defendant Reynoso did not form a plan or agreement with anyone to conceal any

wrongful conduct toward Plaintiff by not filing a report.  Reynoso Decl. ¶ 5.[10]

Once they were inside the holding cell room, a physical altercation occurred between

Plaintiff and Defendants Fambrough and Duncan.  Defendant Curtiss observed some of this

incident.[11]  Plaintiff contends that Defendant Kalkis was also involved in the initial incident.

Pl.'s Dep. 141:22-24.  Plaintiff contends that Defendant Kalkis was present throughout the

incident inside the holding room.  Defendant Kalkis in concert with Astorga, and Defendants

Curtiss and Fambrough used force against Plaintiff and observed the use of force against Plaintiff

when none was necessary.  Pl.'s Compl. 7:3-9.[12]

witnessed Plaintiff resisting officers and should have written a report, but did not.  This argument
does not dispute Defendants' undisputed fact, as the fact is derived from Plaintiff's own
deposition testimony.  Plaintiff's objection is denied.

[9] Plaintiff contends that Defendant Reynoso should have submitted an incident report as
required by CDC policies and procedures. Pl.'s Statement Disputed Facts  3. Plaintiff's argument
does not create a dispute since both parties agree that Defendant Reynoso did not file an incident
report.  Plaintiff's objection is denied.

[10] Plaintiff contends that Defendant Reynoso had an affirmative duty to submit an
incident report.  Pl.'s Statement Disputed Facts 3 (citing Cal. Code Regs. tit. 15 § 3268.1(a)(1)).
Plaintiff contends that all of the officers issued knowingly false incident reports or failed to issue
incident reports.  *Id.*  Plaintiff's objection is not sufficient to link Defendant Reynoso to an
agreement to violate Plaintiff's constitutional rights.  Plaintiff's objection is denied.

[11] Plaintiff contends that Defendant Curtiss was a participant in the incident, citing to
Defendant Curtiss's incident report.  Pl.'s Suppl. Opp'n Ex. E.  This is not disputed.  Plaintiff's
objection is denied.

[12] Plaintiff contends that Defendant Kalkis was present throughout the incident inside the
holding room.  Plaintiff contends that Defendant Kalkis in concert with Defendants Curtiss,
Astorga, and Fambrough used force against Plaintiff and observed the use of force against
Plaintiff when none was necessary.  Pl.'s Statement Disputed Facts 3-4.  This contention repeats
Plaintiff's claims in his verified complaint.
Defendant Kalkis contends that he did not observe anyone push Plaintiff into a wall or
strike, punch, kick Plaintiff.  After the physical altercation in the holding cell room was over,
Defendant Kalkis observed Curtiss and Fambrough attempting to restrain Plaintiff on the floor.
Defendant Kalkis believed that Plaintiff was combative, upset, and agitated.  Accordingly,

Defendant Adams, Lane, Rodriguez, and Reynoso played no role in the incident in the hold cell room.  Adams Decl. ¶¶ 4, 6, 7; Lane Decl. ¶¶ 3-5; Rodriguez Decl. ¶¶ 3-5; Reynoso Decl. ¶¶ 4-7.  Defendants Adams, Lane, Rodriguez, and Reynoso did not believe, or have any reason to believe, that Defendants Curtiss, Duncan, or Fambrough posed a threat of harm to Plaintiff.  Defendants Adams, Lane, Rodriguez, and Reynoso did not form a plan or agreement to harm Plaintiff in the holding cell room, and they were not aware of anyone who formed a plan or agreement to harm Plaintiff in the holding cell room.  Adams Decl. ¶¶ 4, 6, 7; Lane Decl. ¶¶ 3-5; Rodriguez Decl. ¶¶ 3-5; Reynoso Decl. ¶¶ 4-7.[13]  Later on September 8, 2003, Plaintiff was transported to the administrative segregation unit.  Inside the administrative segregation unit, a physical altercation occurred between Plaintiff and Defendants Lane and Rodriguez.  Pl.'s Dep. 182:14-183:6.

Defendants Adams, Curtiss, Duncan, Fambrough, Kalkis, and Reynoso played no role in the incident inside administrative segregation.  Adams Decl. ¶¶ 4, 6, 7; Fambrough Decl. ¶¶ 11-12; Duncan Decl. ¶¶ 12-13; Kalkis Decl. ¶¶ 5-6; Curtiss Decl. ¶¶ 14-15; Reynoso Decl. ¶¶ 5-7. Defendants Adams, Curtiss, Duncan, Fambrough, Kalkis, and Reynoso did not believe, or have any reason to believe, that Defendants Lane or Rodriguez posed a threat of harm to Plaintiff. Defendants Adams, Curtiss, Duncan, Fambrough, Kalkis, and Reynoso did not form a plan or agreement to harm Plaintiff in administrative segregation they were not aware of anyone who formed a plan or agreement to harm Plaintiff in the holding cell room.  Adams Decl. ¶¶ 4, 6, 7; Fambrough Decl. ¶¶ 11-12; Duncan Decl. ¶¶ 12-13; Kalkis Decl. ¶¶ 5-6; Curtiss Decl. ¶¶ 14-15;

---

Defendant Kalkis believed it was necessary to restrain Plaintiff in order to prevent him from kicking someone.  Defendant Kalkis used only the amount of force necessary to hold Plaintiff's legs to the floor.  Defendant Kalkis did not intend or attempt to injure Plaintiff.  Defendant Kalkis did not use any other force or observe anyone use more than enough force to restrain Plaintiff. Kalkis Decl. ¶ 4.  Defendants concede that this fact is disputed.

[13]  Plaintiff contends that Adams hired or retained Astorga and Defendant Fambrough with known propensities of violence towards inmates.   Pl.'s Statement Disputed Facts 4. This objection is denied for the same reasons cited in footnote 4.

1    Reynoso Decl. ¶¶ 5-7.[14]

2         Plaintiff was charged and convicted of assaulting Defendant Duncan.  Ex. B, p. 8.

3    Plaintiff attended the hearing, but chose not to participate. At the hearing, he said "If this is the

4    way you're going to do this, then I'm guilty."  *Id.*  Plaintiff did not lose any good time credits,

5    because the hearing was not conducted within fifteen days of the subject incident.  *Id.*

6    **IV.    Discussion**

7         Defendants contend that Defendants Adams and Reynoso should be granted summary

8    judgment because Plaintiff cannot establish a prima facie conspiracy claim against them.  Defs.'

9    Mot. Summ. J. 8:4-21, Doc. 55.  Defendants Curtiss, Duncan, Fambrough, Lane, Rodriguez, and

10   Kalkis move for partial summary judgment for Plaintiff's conspiracy claim.  *Id.*[15]  Defendants

11   further contend that Plaintiff cannot maintain a claim against Defendant Adams on a theory of

12   respondeat superior, and that Plaintiff cannot maintain any claims against Defendant Reynoso.

13   *Id.* at 8:24-9:23; 12:15-14:2.

14        **A.    Conspiracy**

15        To state a claim for conspiracy under 42 U.S.C. § 1983, Plaintiff must show the existence

16   of an agreement or a meeting of the minds to violate his constitutional rights, and an actual

17   deprivation of those constitutional rights resulting from that agreement.  *Avalos v. Baca*, 596

18

19        ───────────────

20        [14]  Plaintiff contends that Defendant Adams hired or retained Astorga and Defendant
     Fambrough, who had known propensities for violence.  Pl.'s Statement Disputed Facts 4.
21   Plaintiff contends that all the officers acted in concert by submitting false incident reports or
     failing to submit incident reports.  Pl.'s Statement Disputed Facts 4. Plaintiff contends that upon
22   Plaintiff's arrival to administrative segregation, Defendants Lane and Rodriguez were waiting for
     Plaintiff outside the entrance of the building and without cause proceeded to batter Plaintiff.
23   Pl.'s Statement Disputed Facts 4.   Plaintiff's objection regarding Defendant Adams should be
     denied as stated in footnote 4.  Plaintiff's objection regarding officers' submission of false
24   incident reports or failure to submit incident reports is not sufficient to dispute Defendants' fact
     that Defendants Curtiss, Fambrough, Duncan, Kalkis, and Reynoso played no role in the
25   administrative segregation incident.  Plaintiff's objection is denied.

26        [15]  Defendants withdraw their contention that Defendant Kalkis is entitled to qualified
27   immunity as to Plaintiff's Eighth Amendment claim.  Defendants concede that Plaintiff raised a
     triable issue of material fact regarding his Eighth Amendment claim. Defs.' Reply 2:1-2, Doc.
28   61.

1   F.3d 583, 592 (9th Cir. 2010); *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).

2          Defendants contend that there is no conspiracy claim as to any Defendants, as there are no

3   facts which demonstrate an agreement or meeting of the minds to violate Plaintiff's

4   constitutional rights.[16]  Defs.' Mot. Summ. J. 8:4-21.  Plaintiff contends that Defendants Duncan,

5   Fambrough, Kalkis, and Curtiss submitted false incident reports alleging that Plaintiff had

6   battered Defendant Duncan.  Plaintiff contends that Defendant Reynoso failed to file an incident

7   report.  Plaintiff contends that this demonstrates a conspiracy to violate Plaintiff's constitutional

8   rights.

9          Based on the facts presented, and construed in the light most favorable to Plaintiff as the

10  non-moving party, Plaintiff has not demonstrated a conspiracy.  There are no facts which

11  demonstrate an agreement between the parties to violate Plaintiff's constitutional rights.  The

12  filing or lack of filing of reports is not demonstrative of an agreement to violate constitutional

13  rights, nor demonstrative that an agreement resulted in the deprivation of Plaintiff's

14  constitutional rights. *See Avalos v. Baca*, 517 F. Supp. 2d 1156, 1170 (C. D. Cal. 2007) (finding

15  the plaintiff had failed to demonstrate conspiracy because he presented no evidence to support

16  existence of agreement, whether agreement was specific or inferred from conduct, nor was

17  deprivation of rights a result of such agreement).  Summary judgment should be granted in favor

18  of Defendants as to Plaintiff's conspiracy claim as a matter of law.[17]

19         Plaintiff's sole argument that Defendant Reynoso was in a conspiracy to violate his

20  constitutional rights is that Defendant Reynoso failed to write a report.  Such a fact does not

21

22         [16]  It is undisputed that there is a triable issue of material fact as to the underlying
    constitutional violation, namely the alleged excessive force incidents involving Defendants
23  Duncan, Fambrough, Curtiss, and Kalkis, and Defendants Lane and Rodriguez.

24         [17]Plaintiff includes a new alleged fact in his supplemental opposition, contending that
    after he was taken to the administrative segregation unit, Defendant Rodriguez stated, "You like
25  to assault staff, Duncan is my buddy."  Pl.'s Decl. 5:16-21, Doc. 122.  Plaintiff provides no
    explanation as to why this allegation did not appear in his original opposition.  It also does not
26  demonstrate a conspiracy between Defendants to assault Plaintiff, as it does not demonstrate a
    meeting of the minds to violate Plaintiff's constitutional rights.
27

28

indicate Defendant Reynoso entered into an agreement to violate Plaintiff's civil rights.
Construing the facts in the light most favorable to Plaintiff as the non-moving party, it is
indicative at best of Defendant Reynoso's failure to comply with a state regulation, which is not
itself a constitutional violation.  There are no facts which indicate that Defendant Reynoso
entered into an agreement with other Defendants to violate Plaintiff's constitutional rights prior
to the alleged constitutional violation, the excessive force. There is no triable issue of material
fact as to Plaintiff's claim that Defendant Reynoso was in a conspiracy to violate Plaintiff's
constitutional rights.  This is the only theory of liability against Defendant Reynoso in this action.
Thus, Defendant Reynoso should be dismissed from this action.

**B.   Supervisory Liability**

Defendants contend that Plaintiff cannot maintain a clam against Defendant Adams, as
his claim amounts to at most liability under a theory of respondeat superior.  Defs.' Mot. Summ.
J. 8:24-9:23.  Plaintiff contends that Defendant Adams was responsible for review of staff's
actions.  Pl.'s Suppl. Opp'n 4:15-6:28.

Based on the undisputed facts, Plaintiff cannot maintain a claim against Defendant
Adams based on his supervisory role.  Under § 1983, Plaintiff must demonstrate that each
defendant *personally* participated in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d
930, 934 (9th Cir. 2002) (emphasis added).  The term "supervisory liability," loosely and
commonly used by both courts and litigants alike, is a misnomer.  *Ashcroft v. Iqbal*, 129 S. Ct.
1937, 1949 (2009).  "Government officials may not be held liable for the unconstitutional
conduct of their subordinates under a theory of *respondeat superior*."  *Id.* at 1948.  Rather, each
government official, regardless of his or her title, is only liable for his or her own misconduct,
and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual
actions, violated Plaintiff's constitutional rights.  *Id.* at 1948-49.

When the named defendant holds a supervisorial position, the causal link between the
defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v.
Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.
1978).  For § 1983 claim for supervisory liability, plaintiff must demonstrate some facts

12

1 indicating that the defendant either personally participated in the alleged deprivation of

2 constitutional rights or knew of the violations and failed to act to prevent them. *Taylor v. List*,

3 880 F.2d 1040, 1045 (9th Cir. 1989).

4       Construing the facts in the light most favorable to Plaintiff as the non-moving party, there

5 is no triable issue of material fact as to Plaintiff's claim against Defendant Adams. The

6 undisputed facts do not demonstrate that Defendant Adams was aware of a constitutional

7 violation. There are no facts which indicate that Defendant Adams personally participated in the

8 deprivation of Plaintiff's constitutional rights, or knew of the constitutional violation and failing

9 to act to prevent it. Plaintiff's argument that Defendant Adams should have reviewed the

10 adequacy of the reports and investigation of the incident, after the alleged excessive force

11 incidents had already occurred, does not demonstrate personal participation in the constitutional

12 deprivation of Plaintiff's rights. The facts demonstrate at most *respondeat superior* liability,

13 which fails for § 1983 claims. *Iqbal*, 129 S. Ct. at 1949. Defendant Adams is entitled to

14 summary judgment as a matter of law.

15 **V.**     **Conclusion And Recommendation**

16       Based on the foregoing, it is HEREBY RECOMMENDED that:

17     1.     Defendants' motion for summary judgment, filed April 3, 2009, should be

18         granted;

19     2.     Partial summary judgment should be granted in favor of Defendants Rodriguez,

20         Kalkis, Curtiss, Fambrough, Lane, and Duncan and against Plaintiff as to

21         Plaintiff's conspiracy claim;

22     3.     Summary judgment should be granted in favor of Defendants Adams and Reynoso

23         and against Plaintiff in full; and

24     4.     Defendants Adams and Reynoso should be dismissed from this action.

25 ///

26 ///

27 ///

28 ///

1    ///

2    ///

3    ///

4    ///

5          These Findings and Recommendations will be submitted to the United States District

6    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen**

7    **(14) days** after being served with these Findings and Recommendations, the parties may file

8    written objections with the Court.  The document should be captioned "Objections to Magistrate

9    Judge's Findings and Recommendations."  A party may respond to another party's objections by

10   filing a response within **fourteen (14) days** after being served with a copy of that party's

11   objections.  The parties are advised that failure to file objections within the specified time may

12   waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th

13   Cir. 1991).

14         IT IS SO ORDERED.

15   **Dated:    March 9, 2012                            /s/ Dennis L. Beck**
                                                       UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28